**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | : | Civ. No. 05-5575 (GEB) |
| Plaintiff, | : | **OPINION** |
| v. | : | |
| CAL-TRAN ASSOCIATES, INC., MUGROSE REALTY, INC., and TIGER TOPS REALTY, INC., | : | |
| Defendants. | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon plaintiff Hartford Casualty Insurance Company's ("Plaintiff") second motion for partial summary judgment. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The action was reassigned to the undersigned on November 15, 2006. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will grant Plaintiff's motion.

## I.     BACKGROUND

### A.     Facts

On November 28, 2005, Plaintiff filed the present lawsuit against defendants Cal-Tran Associates, Inc. ("Cal-Tran"), Mugrose Realty, Inc., and Tiger Tops Realty, Inc.'s (collectively "Defendants"). (Compl. ¶¶ 7-9.) It claims that Defendants breached a general indemnity agreement between the parties dated September 25, 1997 ("Agreement"). (*Id.* ¶ 11.) Plaintiff alleges that pursuant to the Agreement, it acted as a surety for work that Cal-Tran agreed to perform for the New York City Department of Transportation ("NYC DOT") in replacing certain bridges located in Queens, New York ("the Project"). (*Id.* ¶¶ 1, 15.) According to Plaintiff, the

1

Agreement provided that Defendants would indemnify Plaintiff, under specified circumstances, for damages that Plaintiff might incur as the surety for Cal-Tran. (*Id*. ¶ 2.)  Protected by the indemnification provisions of the Agreement, Plaintiff issued labor and material payment bonds on Cal-Tran's behalf with respect to the Project (*Id*. ¶¶ 2, 15.)   Plaintiff alleges that Cal-Tran was terminated from the Project "for cause," and that NYC DOT demanded that Plaintiff arrange for the completion of the Project pursuant to its performance bond. (*Id.* at ¶ 3.)  Plaintiff further alleges that it received a number of claims pursuant to the payment bond that it issued for the Project and that it has already made payments, and may be required to make further payments, to certain suppliers and subcontractors involved with the Project and that Cal-Tran has failed to pay. (*Id.* at ¶ 4.)   Plaintiff now seeks indemnification by Defendants for those payments. (*Id.* at ¶ 5.)

### B.      Procedural History

On March 13, 2006, Defendants filed a motion to dismiss Plaintiff's claims.  The Court denied that motion on December 18, 2006.  On February 23, 2007, Plaintiff filed its first  motion for partial summary judgment.  The Court denied that motion on May 24, 2007, with permission to re-file the motion following the close of discovery.  Discovery was completed in September 2007 and the matter was placed on the Court's trial calendar.  The parties subsequently reached a settlement in principle, and the Court removed the matter from the trial calendar by an order dated January 29, 2008.  However, since the parties never entered into a settlement agreement, the Court restored this matter to the active calendar and granted Plaintiff permission to re-file this motion by an order dated May 30, 2008.  Plaintiff filed the current motion for partial summary judgment on June 27, 2008.  It seeks: (1) summary judgment with respect to whether Defendants are liable pursuant to the Agreement; (2) that the Defendants be required to make a collateral security deposit against Plaintiff's losses in the amount of $5,593,754; and (3) that the Defendants be compelled to produce their books and records with respect to the Project for examination and inspection by Plaintiff.

2

## II.      DISCUSSION

### A.      Standard of Review for Motions for Summary Judgment

Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   Issues of material fact are genuine only if the evidence presented could allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the nonmoving party. *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).   However, the nonmoving party "cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact" sufficient to defeat summary judgment. *Pastore v. Bell Tel. Co.*, 24 F.3d 508, 511 (3d Cir. 1994); *see also* Fed. R. Civ. P. 56(e) (nonmoving party's response must contain specific facts showing that there is a genuine issue for trial.)

### B.      Enforcement of Indemnity Agreements Pursuant to New York Law

As the Court explained in its decision denying Defendants' motion to dismiss and reiterated in Plaintiff's first motion for summary judgment, this contract dispute is governed by New York law. *See Hartford Cas. Ins. Co. v. Cal-Tran Assocs., Inc.*, Civ. No. 05-5575 (GEB), 2006 U.S. Dist. LEXIS 90954, at *3-4 (D.N.J. December 18, 2006); 2007 U.S. Dist. LEXIS 37972 , at *4 (D.N.J. May 24, 2007).   In cases concerning the enforcement of indemnity agreements, New York courts have held that "'the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount . . . .'" *Lee v. T.F. DeMilo Corp.*, 29 A.D.3d 867, 868 (N.Y. App. Div. 2006) (quoting *Frontier Ins. Co. v. Renewal Arts Contracting Corp.*, 12 A.D.3d 891, 892 (N.Y. App. Div. 2004)).   Courts have reasoned that "[a]bsent bad faith, fraud or extravagance, the surety is entitled to pay the actual costs incurred in completing the construction project and then be provided indemnification

3

pursuant to the agreement") *First Nat'l Ins. Co. v. Joseph R. Wunderlich, Inc.*, 358 F. Supp. 2d 44, 52 (N.D.N.Y. 2004) (citations omitted).  *See also Int'l Fidelity Ins. Co. v. Spadafina*, 192 A.D.2d 637, 639 (N.Y. App. Div. 1993) ("[c]ourts have upheld the validity of [indemnity agreements] and have ruled that payments made by sureties under such provisions are scrutinized only for good faith and reasonableness as to the amount paid.")  "'[T]his rule applies regardless of whether the principal was actually in default or liable under its contract with the obligee.'" *Lee*, 29 A.D.3d at 868 (quoting *Frontier Ins. Co.*, 12 A.D.3d at 892).

 A determination of whether a contractor was actually in default on the guaranteed contract is immaterial to the surety's right to indemnification. *U.S. Fidelity & Guaranty Co. v. Sequip Participacoes, S.A.*, 2003 WL 22743430, at *6 (S.D.N.Y. 2003) (quoting *BIB Constr. Co. v. Fireman's Ins. Co. of Newark, N.J.*, 214 A.D.2d 521, 524 (N.Y. App. Div. 1995)) ( "pending litigation to determine whether a contractor defaulted on its contract 'is irrelevant to whether the [surety] properly complied with its obligations as a surety' to the bond's obligee."  "[W]hile a contractor might ultimately be found to not have defaulted on the guaranteed contract, such a finding would not affect that contractor's obligations under an agreement to indemnify the surety against liability." *Id.* (citation omitted).  *See also Gen. Acc. Ins. Co. v. Merritt-Meridian Constr. Corp.*, 975 F. Supp. 511, 516 (S.D.N.Y. 1997) (holding that in a lawsuit brought by a surety for indemnification, "[i]t is irrelevant whether [the contractor] was actually liable for the payments claimed by the subcontractors or actually defaulted on their contracts with the owners, so long as [the surety] acted in good faith in making the payments and completing the performance under the construction contracts"); *Lori-Kay Golf, Inc. v. Lassner*, 460 N.E.2d 1097, 1098 (N.Y. 1984) (stating that "[a]s a general rule, a surety is equitably entitled to full indemnity against the consequences of a principal obligator's default[,] [including] the right to reimbursement for legal fees incurred in defending an action brought against the principal even though it may be groundless.")

4

### C.     Whether Plaintiff's Motion for Partial Summary Judgment Should Be Granted as to Defendants' Liability

#### 1. There is No Genuine Issue as to Any Material Fact Regarding Defendants' Liability

Plaintiff argues that summary judgment should be entered as to Defendants' liability because the Agreement is enforceable under New York law and there is no genuine dispute that Plaintiff is entitled indemnification.  (Pl.'s Br. at 11-12.)

Under Article III of the Agreement,  Defendants agree to indemnify Plaintiff  "from all loss, liability, damages and expenses, including, but not limited to, court costs, interest and attorney's fees, which the Surety incurs or sustains (1) because of having furnished any Bond, or (2) because of the failure of an Indemnitor to discharge any obligations under this agreement, or (3) in enforcing any of the provisions of this agreement." (Aff. of Gary A. Judd in Support of Motion for Partial Summary Judgment, Ex. B, Art. III.)  Article V of the Agreement provides that "[v]ouchers or other evidence of such payments, including records of any nature maintained by the Surety in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the indemnitors to the Surety." (*Id.* at Art. V).  Courts have upheld the validity of such indemnity agreement provisions and have held that the only relevant inquiry is whether the amount paid by the surety on the contract was reasonable and was done in good faith. *See Int'l Fidelity Ins. Co. v. Spadafina*, 192 A.D.2d 637, 639 (N.Y. App. Div. 1993); *Lee v. T.F. DeMilo Corp.*, 29 A.D.3d 867, 868 (N.Y. App. Div. 2006); *Frontier Ins. Co. v. Renewal Arts Contracting Corp.*, 12 A.D.3d 891, 892 (N.Y. App. Div. 2004).

Defendants counter that there is a genuine dispute of material fact regarding whether Plaintiff acted in bad faith by: (1) agreeing to alter the method of completion of the Project; (2) agreeing to increase the scope of work beyond what was required under the construction contract between; and (3) failing to pursue change orders from NYC DOT for the extra and additional work completed on the contract. (*Id.* at 6-7.)  Defendants allege that in so doing, Plaintiff unreasonably and in bad faith increased the cost of performance under the contract. (*Id.*)

5

Defendants further allege that there is a genuine dispute of material fact as to whether the amount of Plaintiff's demand for collateral security is reasonable, as it includes the costs incurred by Plaintiff for this additional work. (*Id.* at 3.)

Defendants fail to address the fact that Plaintiff is seeking summary judgment *only* as to Defendants' liability under the Agreement, not the reasonableness of the amount of Plaintiff's payments made through the course of its completion of the Project. These arguments do not attack Plaintiff's decision to perform its obligations under the performance bond generally, but rather apply to the amount of work performed by the Plaintiff under the bond. (Defs.' Br. at 8-9.) These arguments do not address the Defendants' liability to the Plaintiff under the Agreement but rather apply only to the amount of indemnification to which Plaintiff is ultimately entitled. This is beyond the scope of Plaintiff's motion for partial summary judgment. (*See* Pl.'s Br. at 23-24.) For this reason, Defendants have failed to demonstrate that there is a genuine dispute of material fact as to their liability under the Agreement.

### 2. A Determination of the Defendants' Default is not Required to Determine Their Liability Under the Agreement

Defendants further argue that because Plaintiff "failed to perform in good faith its fundamental duty to investigate [the Defendants' reasons for terminating its contract with the NYC DOT]" and recognize that it had a basis for resisting the NYC DOT's demand that it complete the Project, the Court should view it as a volunteer who was not required to perform under the bond and so should not permit it to recover under the Agreement. (Defs.' Br. at 12.)

As Plaintiff notes, Defendants set forth a similar argument in its motion to dismiss. (Pls. Rep. at 5 (citing Defs.' Br. in Opp. to Pl.'s First Mot. for Part. Summ. Judg. at 5). However, as the Court noted in its decision on that motion, New York courts have held that "pending litigation to determine whether a contractor defaulted on its contract 'is irrelevant to whether the [surety] properly complied with its obligations as a surety' to the bond's obligee." *Sequip Participacoes*, 2003 WL 22743430, at *6 (quoting *BIB Constr.*, 214 A.D.2d at 524). *See also Merritt-Meridian Constr.*, 975 F. Supp. at 516 ("[i]t is irrelevant whether [the contractor] was actually liable for the

6

payments claimed by the subcontractors or actually defaulted on their contracts with the owners, so long as [the surety] acted in good faith in making the payments and completing the performance under the construction contracts.")

In arguing that a finding of Cal-Tran's default is required, Defendants once again rely primarily on *General Insurance Company of America v. K. Capolino Construction Corp.*, 903 F. Supp. 623 (S.D.N.Y. 1995). In that case, the plaintiff was a surety for the defendant contractor for certain construction work that the defendant was hired to perform. *Id.* at 624-25. The plaintiff continued the project when the defendant stopped work before its completion. *Id.* at 625. The plaintiff sought indemnification by the defendant for the costs that it incurred, and moved for summary judgment of the defendant's liability. *Id.* at 625-26.

The court denied the motion because it found that there was a genuine dispute of material fact concerning whether the contractor or the owner was the party in default. *Id.* at 627. According to the court, "[t]he performance bonds at issue here state that the surety's obligation arises '[i]f there is no Owner Default.'" *Id.* According to the court, "[the surety] is obligated to complete the contracts only if the [owner] was actually not in default." *Id.*

Defendants argue that, similar to the express condition in the *Capolino* bond that the surety's obligation to perform arises only if there is an owner default, in this case there is an "*implicit* condition precedent" that must be fulfilled prior to Plaintiff's obligations to be triggered under the performance bond: "namely, that the determination of default . . . [of Cal-Tran by the NYC DOT] be both procedurally proper and substantively meritorious." (Defs.' Br. at 14) (Emphasis in original.) The Court finds no support in New York law for this argument. Again, in a lawsuit brought by a surety for indemnification, "[i]t is irrelevant whether [the contractor] was actually liable for the payments claimed by the subcontractors or actually defaulted on their contracts with the owners, so long as [the surety] acted in good faith in making the payments and completing the performance under the construction contracts." *Gen. Acc. Ins. Co. v. Merritt-Meridian Constr. Corp.*, 975 F. Supp. 511, 516 (S.D.N.Y. 1997). Since there is no express

7

condition in the performance bond at issue requiring Plaintiff to investigate the validity of NYC DOT's declaration of default against Defendants, Plaintiff was under no obligation to make such an inquiry before performing its obligations under the bond.

Further, as this Court also noted in its decision on Defendants' motion to dismiss, the Appellate Division of the New York Supreme Court in *Frontier Ins. Co. v. Renewal Arts Contracting Corp.,* 12 A.D.3d 891 (N.Y. App. Div. 2004), subsequently cast doubt over the analysis that the *Capolino* court applied. *Id.* In that case, the court stated that "it is our view that this rule [that a surety who pays a claim that it is not obligated to pay is a volunteer and may not recover from the principal] was misapplied in *Capolino* and it is inapplicable here because it is pertinent only in the absence of an indemnification agreement controlling the principal's obligation to the surety." *Id.* at 893 (citations omitted).

Defendants argue that this criticism of *Capolino* is unjustified because: (1) there was a written indemnity agreement in *Capolino*; and (2) the indemnity agreement in *Frontier,* unlike the agreement in *Capolino* and the instant case, contained language that permitted the surety to bind the principal to its decisions to settle or litigate any claim. (Defs.' Br. At 15.) However, these distinctions do not indicate that *Frontier's* criticism of *Capolino* is unfounded and does not negate the fact that it is a well settled principal under New York law that, in a lawsuit brought by a surety for indemnification, "[i]t is irrelevant whether [the contractor] was actually liable for the payments claimed by the subcontractors or actually defaulted on their contracts with the owners," *Int'l Fidelity Ins. Co. v. Spadafina*, 192 A.D.2d 637, 639 (N.Y. App. Div. 1993). *See also U.S. Fidelity & Guaranty Co. v. Sequip Participacoes, S.A.*, 2003 WL 22743430, at *6 (S.D.N.Y. 2003) (quoting *BIB Constr. Co. v. Fireman's Ins. Co. of Newark, N.J.*, 214 A.D.2d 521, 524 (N.Y. App. Div. 1995) ("[P]ending litigation to determine whether a contractor defaulted on its contract 'is irrelevant to whether the [surety] properly complied with its obligations as a surety' to the bond's obligee.") For these reasons, the Court finds that dismissal of Plaintiff's claims on the ground that Plaintiff was acting as a volunteer when it performed on the bond would be

inappropriate.

**D.      Whether Defendants are Required to Post Collateral Security**

Plaintiff seeks specific performance of Defendants' posting of collateral security of $5,593,754 against Plaintiff's anticipated losses.  (Pl.'s Br. at 6).  Article IV of the Agreement addresses Defendants' obligation to post collateral security and states that, "[o]n demand by the Surety, the Indemnitors will pay the Surety the amount deemed necessary by the Surety to protect itself from all losses or expenses as soon as the Surety determines that liability exists, whether or not the Surety has made any payment or created any reserve."  (Judd Aff., Ex. B, Art. IV).

New York courts have upheld the validity of such collateral security provisions, even when the surety's loss has yet to be finalized.  *Travelers Cas. & Sur. Co. v. Dale*, 542 F. Supp. 2d 260, 263-64 (S.D.N.Y. 2008) ("[a] collateral security provision in an indemnity agreement, which is clear and unambiguous . . . that imposes upon an indemnitor . . . an obligation to provide a surety collateral security after the surety has received a demand . . .[from the owner], and prior to any actual bond loss, is valid and enforceable.") (quoting *Amer. Motorists Ins. Co. v. United Furnace Co., Inc.*, 876 F.2d 293, 299 (2d Cir. 1989)).  *See also United States Fid. and Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 922 (E.D.N.Y. 1999) ("Courts in New York have routinely upheld the validity of collateral security clauses and enforced their terms.) (citing *United Furnace*, 876 F.2d at 302; *Amer. Motorists Ins. Co. v. Pennsylvania Beads Corp.*, 983 F. Supp 437, 440 S.D.N.Y. 1997); *BIB Constr. Co. v. Fireman's Ins. Co. of Newark, N.J.*, 214 A.D.2d 521, 522-23 (N.Y. App. Div. 1995); *Safeco Ins. Co. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984)).  Further, "[t]he obligation to make the deposit is subject to enforcement by specific performance . . . [because] [t]he damage resulting from the failure to give securityis not ascertainable, and the legal remedy is therefore inadequate." *BIB Constr.*, 214 A.D.2d at 523 (internal quotations and citations omitted.)

As previously mentioned, Defendants argue that the Plaintiff's demand for collateral security is unreasonable because it includes the costs incurred by Plaintiff for completing extra

work that was not required under the Cal-Tran/NYC DOT contract. *See* Section C.1., *supra*, at 5-6.  However, this argument does not address the validity of the collateral security provision of the Agreement but instead applies to the amount of damages to which Plaintiff will ultimately be entitled.  "The posting of an adequate reserve does not represent a claim for damages or an award in indemnification. It is merely collateral security held in trust by the insurer that must be repaid to the extent that damages are reduced or not awarded." *BIB Constr.,* 214 A.D.2d at 523 (citing *United Furnace Co.*, 876 F.2d at 200.  Should Defendants demonstrate at trial that the amount of damages to which Plaintiff is entitled is less than the amount of posted collateral security, they will be entitled to repayment.  For these reasons, the collateral security clause in the Agreement is enforceable by specific performance.

### E.      Whether Plaintiffs Have the Right to Inspect Cal-Tran's Books and Records

Plaintiff further seeks that the Court permit it to review Cal-Tran's books and records with respect to the Project  as is required by the Agreement.  (Pl.'s Br. at 6).  Article VI of the Agreement provides that "[t]he Surety shall have access to all the books, records, and other documents of the Indemnitors during regular business hours or at any other reasonable time until the liability of the Surety under each Bond is terminated."  (Judd Aff., Ex. B, Article VI).  Under the Performance Bond, Plaintiff's obligation to complete the work on the Project is not considered "null and void" until Cal-Tran "well and faithfully perform[s] the said Contract and all modifications, amendments, additions and alterations thereto that may hereafter be made."  (Judd Aff., Ex. C at C-17).  Since it has been established that Plaintiff was not performing as a volunteer when it stepped in to complete the Project, and because Defendants do not dispute Plaintiff's assertion that it may be required to make further payments to certain suppliers and subcontractors involved with the Project, Plaintiffs liability under the bond has been triggered and continues to be in effect.  For this reason, Plaintiff is entitled to review Cal-Tran's books and records. *See* Section C.2., *supra* at 6-9; (Compl. at ¶ 4.)

## III.    CONCLUSION

For these reasons, Plaintiffs' motion for partial summary judgment is granted.

An appropriate form of order is filed herewith.


Dated: September 4, 2008

                                                    s/ Garrett E. Brown, Jr.

                                        GARRETT E. BROWN, JR., U.S.D.J.

11